**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FNBN-RESCON I LLC, a Delaware limited liability company, | Case No.: 2:11-cv-1867-GMN-VCF |
| Plaintiff, | Consolidated with 2:11-cv-1868-GMN-VCF |
| vs. | **ORDER** |
| JOHN A. RITTER, Individually; JOHN A. RITTER, as Trustee of The Mustang Trust, | |
| Defendants. | |

## INTRODUCTION

Plaintiff FNBN-RESCON I LLC ("RESCON") filed a Complaint against John A. Ritter in his individual capacity, and as Trustee of the Mustang Trust ("Defendants"). (Compl., ECF No. 1.) Pending before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(B)(1); or Alternatively, to Dismiss for Failure to Join an Indispensible [*sic*] Party Pursuant to Fed. R. Civ. P. 19. (Mot. Dismiss, ECF No. 7.) Also before the Court is Defendants' identical Motion to Dismiss, filed in Case No. 2:11-cv-1868-GMN-VCF. Because the cases have been consolidated, this Order will dispose of both motions. (Order Granting Mot. Consol., ECF No. 19.)

## BACKGROUND

This case arises out of an alleged default on loan payments. Ironwood Properties, LLC, ("Ironwood") executed a Business Loan Agreement ("the Loan") in September 2004 with First National Bank of Nevada ("FNBN") for the amount of $4,869,045.00. (Compl. at 2:17-20.) In exchange for the loan, Ironwood executed a Promissory Note, which was secured by a Deed of Trust encumbering certain property. (*Id.*)

Defendant, acting in his individual capacity and as Trustee of the Mustang Trust, executed with FNBN a Commercial Guaranty, by which he guaranteed the Loan and any of Ironwood's obligations under it. (*Id.*; Commercial Guaranty Ex. A attached to Compl., ECF No. 1-1.)

FNBN closed in July 2008, and the FDIC—appointed as receiver of the loans—came into possession of the loans that same month. (Compl. at 3:14-15.)  The FDIC created Plaintiff RESCON in February 2009 and transferred to it "all right, title and interest . . . in and to the Loans (including all Notes, the other Loan Documents and Related Agreements)." (Compl. at 3:16-18.)  Shortly thereafter, Stearns SPV I, LLC ("Stearns") purchased from the FDIC its membership interest in RESCON, thus becoming the sole owner of RESCON. (*Id.*)

Plaintiff alleges that Ironwood defaulted on its loans. (Compl. at 4:2-3.)  Plaintiff filed its Complaint in November 2011, claiming that the Commercial Guaranty holds Defendants liable for all payments owing under and performance of any obligation associated with the Loan. (*Id.* at 4:15-17.)  Defendants filed the pending Motion to Dismiss in January 2012. (Mot. Dismiss at 2:3.)

## DISCUSSION

Defendants move to dismiss Plaintiff's claims, arguing that (1) this Court lacks subject matter jurisdiction (Mot. Dismiss at 2:12-15); and (2) that the FDIC is an indispensable party to this suit whose absence requires the Complaint's dismissal. (*Id.* at 3:3-6.)

**I.     Motion to Dismiss for Lack of Jurisdiction**

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction. (Mot. Dismiss at 3:8-9.)  Defendants make this as a factual challenge to the Court's jurisdiction, arguing that because of the FDIC's significant interest in RESCON, "the FDIC's national citizenship status passes to [RESCON], thereby rendering diversity jurisdiction improper." (*Id.*)

/ / /

### A.     Legal Standard – 12(b)(1)

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978).  Courts have subject matter jurisdiction over cases involving a federal question or where diversity of citizenship exists. *Id.*  Federal question jurisdiction exists when a controversy arises under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Diversity jurisdiction exists when there is diversity of parties and an amount in controversy exceeding $75,000.00. 28 U.S.C. § 1332(a).

In determining whether diversity jurisdiction exists over a particular case, a court must find complete diversity of citizenship. *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  Complete diversity of citizenship exists when all plaintiffs to a case are citizens of different states from all defendants. *Id.*  If any two adversaries are citizens of the same state, diversity jurisdiction is destroyed. *Owen,* 437 U.S. at 374.  Complete diversity of citizenship must exist at the time the complaint is filed. *Grupo DataFlux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004).

The citizenship of limited liability companies (LLCs) is determined for jurisdictional purposes by the citizenship of each of its members or owners. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

As a federally-chartered corporation, the FDIC is not considered a citizen of any state in particular, but rather is a national citizen only. *RES-NV TVL, LCC v. Towne Vistas LLC*, 2:10-cv-1084 JCM PAL, 2011 WL 5117886 (D. Nev. Oct. 27, 2011); *see Hancock Financial Corp. v. Fed. Savings and Loan Ins. Corp.,* 492 F.2d 1325 (9th Cir. 1974).  Courts have consistently held that diversity jurisdiction is destroyed when the FDIC is a member of an LLC that is party to a suit. *See Towne Vistas*, 2011 WL 5117886; *RES-NV APC, LLC v. Astoria Pearl Creek, LLC*, 2:11-cv-00381-LDG, 2011 WL 5374050 (D. Nev. Nov. 4, 2011); *Multibank 2009-1 RES-ADC Venture LLC v. CRM Ventures, LLC,* Case No. 10-cv-02001-PAB-CBS (D. Colo. 2010).

Defendants may move to dismiss a complaint that lacks subject matter jurisdiction. Fed.

R. Civ. P. 12(b)(1).  Although Defendants are the moving party, Plaintiff has the burden of proving that subject matter jurisdiction exists. *McCauley v. Ford Motor Co.,* 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). District courts must dismiss a complaint that, "considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* 546 F.3d 981, 984–85 (9th Cir. 2008).

A 12(b)(1) motion can be made in one of two ways: facial or factual challenges.  In a facial challenge, defendants attack the sufficiency of the pleadings supporting subject matter jurisdiction. *Frasure v. United States*, 256 F.Supp.2d 1180, 1184 (D. Nev. 2003).  In this type of 12(b)(1) motion, district courts must accept all allegations as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citing *Bollard v. Cal. Province of the Soc'y of Jesus,* 196 F.3d 940, 944–45 (9th Cir. 1999)).  On the other hand, in a factual attack or "speaking motion," defendants challenge the actual existence of subject matter jurisdiction. *Frasure*, 256 F. Supp. 2d at 1184. In this type of motion, courts should treat the pleadings as evidence, courts should not presume the truthfulness of the plaintiff's allegations, and the plaintiff has the burden of proving that jurisdiction exists. *Id.*  In opposing a factual challenge, a plaintiff meets its burden by presenting evidence outside of the allegations that support a finding of jurisdiction. *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987).  This requirement is "the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." *Id.*

When confronted with a factual challenge, courts are free to weigh the evidence and resolve factual disputes concerning subject matter jurisdiction. *Id.*; *see Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) ("the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where

necessary"). Furthermore, it is within the court's discretion whether to hold an evidentiary hearing on factual disputes. *See Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939) ("[a]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court").

### B.     Analysis

Defendants claim that, given the FDIC's large interest in the loans at issue and the great amount of control it has over RESCON, the FDIC is actually the "real party" to this suit. (Mot. Dismiss at 8:6-7.) As the real party in interest, the FDIC would be added as a party to the suit, which would destroy diversity jurisdiction. Intertwined in Defendants' arguments that the FDIC is a real party to the suit is his argument that the assignment of RESCON to Sterns was improperly or collusively made for the purpose of creating federal subject matter jurisdiction. Thus, the Court will first address these allegations and arguments and then turn to whether or not the FDIC's substantial interest in RESCON makes it a real party in interest to this suit.

#### 1.     Improper or Collusive Assignment

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. §1359. Defendants allege that the FDIC violated 28 U.S.C. §1359 by improperly selling its interest in RESCON to Stearns so as to create diversity jurisdiction. (*Id.* at 8:8-10.) In particular, Defendants argue that the FDIC's substantial control over RESCON as evidenced in the Participation Agreement proves that the FDIC's transfer of RESCON to Stearns was a sham transaction done merely to obtain jurisdiction in federal court. (*Id.* at 2:22-26.)

The standard for determining whether a party improperly created federal subject matter jurisdiction "by assignment or otherwise" is an unsettled area of law. However, the Supreme Court has laid out principles that have guided other federal courts considering this issue. *See*

*Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969).

*Kramer* involved a dispute between Panamanian and Haitian corporations. *Id.* at 824. The Panamanian corporation sought federal jurisdiction by assigning its claim to a Texas lawyer, Kramer, in consideration for which Kramer agreed to pay $1. *Id.* On the same day, Kramer agreed to pay the Panamanian corporation 95% of any net recovery on the assigned cause of action. *Id.* Kramer eventually brought suit in federal court, seeking $165,000 from the Haitian corporation. *Id.* Although the district court held in Kramer's favor, the Court of Appeals remanded the case with directions to dismiss for want of jurisdiction. *Id.*

After discussing the legislative history of the newly amended § 1359, the Supreme Court affirmed the Court of Appeals' finding that Kramer's claim should be dismissed because its assignment was made improperly. *Id.* at 830. In support of its holding, the Court noted that (1) Kramer agreed on the same day as the assignment to pay to the Panamanian corporation 95% of any recovery; (2) Kramer had no previous connection to the case before the transfer; and (3) Kramer admitted that the assignment was "in substantial part motivated by a desire by (Panama's) counsel to make diversity jurisdiction available." *Id.* at 827-28. Furthermore, the Court explained, to allow Kramer's assignment to obtain subject matter jurisdiction would be to open the backdoor to federal court for a tidal wave of last-minute state claims. *Id.*

The Supreme Court has not reconsidered the applicability of § 1359 since its decision in *Kramer*, but the Ninth Circuit recently relied on the principles of *Kramer* when it held that a Taiwanese corporation did not destroy diversity jurisdiction by assigning its claim against a California corporation to a California collection agency. *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 600 (1996). In *Attorneys Trust*, the California collection agency ("Attorneys Trust") sued the California corporation ("Videotape"), who cross-claimed against the Taiwanese corporation ("CMC"). After the district court ruled against CMC and Attorneys Trust, they appealed claiming that the court lacked jurisdiction because CMC's transfer to

Attorneys Trust was improper under § 1359. *Id.* at 594. The Ninth Circuit upheld the district court's ruling, finding that diversity jurisdiction was not destroyed by CMC's transfer in part because CMC did not intend to destroy jurisdiction at the time Attorneys Trust filed its complaint. *Id.* at 600.

Although *Attorneys Trust* concerned solely the *destruction* of jurisdiction by improper assignment, the Ninth Circuit also surveyed and summarized cases dealing with assignment that *creates* federal jurisdiction. *Attorneys Trust*, 93 F.3d at 595-97.[1] The court enumerated several factors it found applicable in determining whether § 1359 applies to a particular assignment or transaction that creates jurisdiction:

> [1] were there good business reasons for the assignment; [2] did the assignee have a prior interest in the item or was the assignment timed to coincide with commencement of litigation; [3] was any consideration given by the assignee; was the assignment partial or complete; and [4] was there an admission that the motive was to create jurisdiction.

*Id.* at 598. Other courts have also found important whether the assignee is funding the litigation. *See, e.g.*, *Reinhart Oil & Gas, Inc. v. Excel Directional Technologies, LLC*, 463 F. Supp. 2d 1240, 1245 (D. Colo. 2006); *Canton Indus. Corp. v. Mi-Jack Prods., Inc.,* 944 F.Supp. 853, 856-57 (D. Utah 1996).

These factors are not criteria that must all necessarily be present, but rather they are to be considered by a court to determine whether, under a totality of the circumstances, an assignment or transfer is improperly or collusively made. *Reinhart*, 463 F. Supp. at 1245; *see Smith v. Sperling*, 354 U.S. 91, 97 (1957) (determining whether an assignment is improper is "a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute").

///

---

[1] The Fifth Circuit noted that "[b]ecause of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact." *Grassi v. Ciba-Geigy, Ltd.,* 894 F.2d 181, 186 (5th Cir.1990).

### a.     Consideration

Typically, courts do not inquire into the validity of consideration. *Wilson v. Bristol W. Ins. Group*, 2:09-cv-00006-KJD-GWF, 2009 WL 3105602 (D. Nev. Sept. 21, 2009); *see Oh v. Wilson*, 112 Nev. 38, 41-42, 910 P.2d 276, 278-79  (Nev. 1996) ("inadequacy of consideration standing alone does not justify rescission of a contract or release"); RESTATEMENT (SECOND) OF CONTRACTS, § 79 (1979).  However, courts have used valid yet nominal consideration as evidence that an assignment was made in order to obtain subject matter jurisdiction improperly. *See Reinhart*, 463 F. Supp. at 1245; *Kramer*, 394 U.S. at 824 (finding collusion in violation of § 1359 when diversity creating assignment was made for consideration of $1); *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 793 (9th Cir. 1989) (finding collusion in part based on a lack of consideration for appointment).  Relying on *Kramer*, other courts have held that nominal or sham consideration for an assignment in order to obtain jurisdiction is strong evidence that the assignment was made improperly or collusively. *See Pasquotank Action Council, Inc. v. City of Virginia Beach*, 909 F. Supp. 376 (E.D. Va. 1995) (finding that the transfer of a small parcel of land for no consideration in part revealed the transferor's intention to improperly obtain federal jurisdiction); *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.*, 546 F.2d 1227 (1977) ("lack of economic substance to the assignment along with the district court's finding that the reasons for the assignment were legal and tactical was tantamount to a finding that the assignment was 'improper or collusive'").

In this case, Plaintiff alleges that Stearns paid valid consideration for the FDIC's interest in RESCON. (Response 3:6-7, ECF No. 13.)  According to Plaintiff, Stearns purchased "all of [the FDIC]'s right, title and interest in and to [RESCON] for a purchase price of $32,208,800.00." (Resp. at n.6.)  This amount is unlike the nominal consideration in *Kramer* or the free-and-clear transfer in *Pasquotank*.  The significant amount of consideration paid by Stearns supports the presumption that the assignment of RESCON was valid and proper.

### b. Motive and Valid Business Reasons

In proving that a transfer was not improperly or collusively made, a plaintiff has the burden of showing that the transfer was made for other valid business reasons besides creation of jurisdiction. *Reinhart*, 463 F. Supp. at 1245. The plaintiff may generally meet his or her burden by offering "evidence that the transfer was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction." *Prudential Oil Corp. v. Phillips Petroleum Co.,* 546 F.2d 469, 476 (2d Cir. 1976); *W. Farm Credit Bank v. Hamakua Sugar Co., Inc.*, 841 F. Supp. 976 (D. Haw. 1994). When there is a legitimate business reason for the transfer, courts generally find that transfer is proper even if it was partially motivated by a desire to create federal jurisdiction. *Hamakua*, 841 F. Supp. at 976; *see Yokeno v. Mafnas*, 973 F.2d 803, 811 (9th Cir. 1992) ("the existence of such dual motives would not render the assignment ineffective for diversity purposes"); *U.S.I. Properties Corp. v. M.D. Const. Co., Inc.*, 860 F.2d 1, 6 (1st Cir. 1988) ("parties may legitimately try to obtain the jurisdiction of federal courts, . . . [but] using a strawman, or sham transactions, *solely* for the creation of otherwise unobtainable jurisdiction, is clearly forbidden") (emphasis added).

The Court finds the $32,208,800.00 paid by Stearns to the FDIC in consideration for the assignment of RESCON is in itself a valid business reason for the assignment. Plaintiff's contention that the assignment is not made collusively is further supported by the fact that Stearns was chosen as the assignee of RESCON through a sealed bidding process. (Resp. at n.6.; *see* Limited Liability Company Interest Sale and Assignment Agreement.) If the FDIC's sole motivation is to obtain diversity jurisdiction by using a straw plaintiff and a collusive assignment, a sealed bidding process—where typically the assignee is unknown until after the bidding is completed—is an unusual and risky way to accomplish those ends.

In determining whether the assignor's motive was proper, courts generally find helpful the presence of valid business reasons for an assignment. *See Reinhart*, 463 F. Supp. 2d at 1258.

Courts disagree about the amount of weight that a transferor's motive should be given when considering §1359 issues. *Attorneys Trust*, 93 F.3d at 596; *see Haskin v. Corporacion Insular de Seguros*, 666 F. Supp. 349, 353 (D. P.R. 1987). In general, however, courts tend to view motive as a significant but not controlling factor. *Haskin*, 666 F. Supp. at 354. Courts are especially sensitive to explicit statements revealing an improper motive. *Kramer*, 394 U.S. at 829. Typically, whether a transferor's motive was proper is determined by objective factors, most of which overlap with those relevant to determining whether a transfer is not barred by § 1359. Perhaps the most important factor in this determination is whether "the assignee has some independent, preexisting legitimate interest in the causes of action assigned to him." *Id.* By looking to (1) whether the assignee had an interest in the claim prior to assignment and (2) how much time has passed between assignment and litigation, a court can get a better picture of an assignor's motive.

In the present case, it is not obvious from either party's filings whether Stearns had an interest in the claims prior to RESCON's assignment. However, the fact that the FDIC assigned its interest to Stearns only a few days after forming and assigning to RESCON the management and service of the loans is nearly conclusive evidence that Stearns did not have an interest before that assignment. While the Court recognizes that this may suggest an improper motive behind the FDIC's assignment, it is tempered by the length of time between assignment and commencement of litigation. Stearns purchased RESCON in February 2009, two and a half years before RESCON filed its complaint. (Compl. at 3:19-20.) This is unlike the cases where courts found assignments improper when they were made shortly before or to coincide with the filing of a complaint. *See Kramer*, 394 U.S. at 824 (noting that Kramer filed his complaint "soon" after the Panamanian corporation's assignment); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987 (9th Cir. 1994) (an assignment suggested collusion when made three days prior to filing of suit).

The consideration, the time between assignment and litigation, and the circumstances surrounding assignment together suggest that the assignment, although possibly motivated by both business judgment and the opportunity to secure diversity jurisdiction, was not improperly or collusively made as § 1359 defines those terms.

### c.  Partial or Complete Transfer

In general, assignments that are complete and where the assignor retains no interest in the litigation are found not to be improperly or collusively made. *See Attorneys Trust*, 93 F.3d at 596; *R. C. Hedreen Co. v. Crow Tribal Housing Auth.*, 521 F. Supp. 599 (D. Mont. 1981) (an "assignment is valid on its face" when the "assignor in this case has relinquished all of its interest in the contracts at issue by virtue of its assignment").  On the other hand, partial or incomplete assignments allowing the assignor to maintain a substantial interest in the litigation are usually presumed to violate § 1359. *See Kramer,* 394 U.S. at 824 (finding jurisdiction improper when the assignment in question was accompanied by an agreement giving assignor 95% interest in any recovery from litigation); *Reinhart*, 463, F. Supp. at 1245.

In addition to whether assignment is partial or complete, courts also consider the relationship between assignor and assignee. *Attorneys Trust*, 93 F.3d at 597.  Courts presume that assignments are collusive if made between closely affiliated parties. *See, e.g.*, *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) ("[a]ssignments between parent companies and subsidiaries, and assignments by corporations to their officers or directors" are presumptively invalid); *McCulloch v. Velez*, 364 F.3d 1, 3 (1st Cir. 2004) (finding that an assignment between a corporation and a shareholder triggers a presumption of collusion); *Syms v. Castleton Indus., Inc.,* 470 F.2d 1078, 1079 (5th Cir. 1972) (assignments between trustees are presumptively collusive).

In the present case, Stearns purchased from the FDIC "all of [its] right, title and interest in and to" RESCON. (Compl. at 8:16-18.) *See* Limited Liability Company Interest Sale and

Assignment Agreement.[2] On its face, the agreement assigning Stearns all of the FDIC's rights to RESCON is valid and complete. However, a closer look at the Participation Agreement entered into between the FDIC and RESCON shows that the FDIC maintains a substantial financial interest in the loans. Thus, because of the continued interest the FDIC has in RESCON, the Court cannot find conclusively that the assignment was complete. However, there is no corporate relation between the FDIC and Stearns that creates a presumption of collusion. Similarly, this is not a transfer that was "merely for collection" since RESCON receives a share of the proceeds of the Loans beyond what it receives for the expenses it incurs through collection. *See Attorneys Trust*, 93 F.3d at 599.

Although the FDIC's significant interest in the Loans makes its transfer of RESCON to Stearns partial and not complete, the Court relies on the substantial consideration, the length of time between assignment and litigation, the transfer of rights to legal claims, and the valid business reasons supporting the transfer to find that Plaintiff has met its burden by presenting evidence that FDIC's assignment of its membership interest in RESCON to Stearns was not improperly or collusively made per § 1359.

### 2. Real Party in Interest

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); Fed. R. Civ. P. 17. The purpose of the Rule is "to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party in interest on the same matter." *Celanese Corp. of Am. v. John Clark Indus.*, 214 F.2d 551, 556 (5th Cir. 1954).

---

[2] In its Response, Plaintiff includes a reference to this agreement, which documents the transfer of RESCON from the FDIC to Stearns. (Resp. at n.6.) A copy of this agreement can be found at: http://www.fdic.gov/buying/historical/structured/FNBN-RESCON_interest_sale_assignment_agreement.pdf.

Defendants claim that the FDIC's substantial interest in RESCON and its loans is conclusive proof that it is the real party in interest, which is evidence that the FDIC should be added as a party to the suit. (Mot. Dismiss at 8:6-7.) Either way, Defendants argue, the FDIC's real party status would destroy jurisdiction. *Id.* Defendants emphasize the fact that "the Participation Agreement entitles the FDIC to receive up to 80% of recovered loan proceeds," in addition to requiring RESCON to obtain the FDIC's written approval before making a number of business moves. (Reply 3:19-20, ECF No. 14.)

In Nevada, a real party in interest is one that (1) has a legal right to bring suit on a claim and (2) has a substantial interest in litigation. *See Painter v. Anderson*, 96 Nev. 941, 943, 620 P.2d 1254, 1256 (1980).

In general, determining whether a party has a substantial interest in litigation is an endeavor that requires a court to look at the totality of the circumstances. *Attorneys Trust*, 93 F.3d at 597. The Ninth Circuit asks these questions when determining whether a party has a substantial interest in litigation:

> Does the assignee have something to lose because he had preexisting rights; or has the assignee paid for the assignment; or has he acquired only a relatively small part of the underlying interest, a part that could be expected to relate to expenses of collection alone; or, finally, is the assignment merely one for collection? In fine, is the assignee truly a real party in interest or just a strawman for all practical purposes?

*Id.*

In this case, it is clear from the pleadings that RESCON has the legal right to bring a claim for recovery of the amount in default. The Participation Agreement states, "[u]pon the occurrence of an event of default under any of the Loan Documents… [RESCON] shall cause to be determined the response to such default and course of action with respect to such default, including… (d) the institution of proceedings against any Guarantor." (Participation and Servicing Agreement Ex. A attached to Decl. of Michael Hogue, § 6.01.) The Court finds that

RESCON satisfied its burden of proving that it has a legal right to bring this action.

Pursuant to the Participation Agreement, the FDIC retains either 60% or 80% of the proceeds of the loans assigned to RESCON, depending on whether one of two specified conditions was met. (Participation and Servicing Agreement Ex. A attached to Decl. of Michael Hogue, § 2.02.)  However, before the FDIC receives its percentage share of proceeds, the Participation Agreement specifies certain expenses that RESCON incurs in servicing and managing the loans. *Id.* at § 3.03.  For example, the Participation Agreement specifies that before the FDIC is paid its share, any proceeds should be dispersed to cover "Working Capital Advances," or the amount to cover RESCON's operational expenses; a "Management Fee;" the fees and expenses of the Document Custodian, or the party in charge of securing the Notes and other related documents; the reimbursement of RESCON for any outstanding Servicing Fees; and the costs of funding a litigation reserve. *Id.*  In sum, the Participation Agreement contemplates that RESCON's operating and servicing expenses are covered before the FDIC receives any proceeds from its participation.  This ensures that RESCON was formed not as a shell company that the FDIC could effectively loot, but instead as a separate entity to service and maintain the loans the FDIC received when FNBN failed.  This finding is further supported by the significant consideration Stearns paid the FDIC for its membership interest in RESCON, a transaction that would be irrational if RESCON had no real interest in recovering on the defaulted loans.

Based on these facts, the Court finds that Plaintiff has a substantial interest in the litigation apart from its assignment to Stearns.  Since RESCON has the legal right to enforce this claim and a substantial interest in the outcome of the case, the Court finds that it is a real party in interest and not the FDIC.  Thus, the Court finds that Plaintiff has met its burden of proving the existence of diversity jurisdiction.

/ / /

## II. Motion to Dismiss for Failure to Join Indispensable Party

Defendant also seeks to dismiss Plaintiff's claim according to Federal Rule of Civil Procedure 12(b)(7), which allows a court to dismiss a complaint that fails to join a necessary and indispensable party. Fed. R. Civ. P. 12(b)(7). In particular, Defendant argues that RESCON's complaint should be dismissed because the FDIC is a necessary party that cannot be joined. (Compl. at 8:17-19.)

### A. Legal Standard – 12(b)(7)

A defendant may move to dismiss a complaint for failure to join a necessary party. Fed. R. Civ. P. 12(b)(7). Under Federal Rule of Civil Procedure 19(a), necessary and indispensable parties to a suit must be joined. Fed. R. Civ. P. 19(a). Courts generally use a three-step analysis when determining if a party need be joined to an action: (1) whether the party is "necessary"; (2) if the party is necessary, whether the party's joinder is "feasible"; and (3) if joinder is not feasible, "whether the case can proceed without the absent party or whether the absent party is an 'indispensable' party such that the court must dismiss the action." *Wright v. Incline Village Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1204 (D. Nev. 2009). If a court finds that a party is not necessary to the suit, then it should not proceed to analyze whether joinder is feasible or the party indispensable. *See In re County of Orange*, 262 F.3d 1014, 1022 (9th Cir. 2001).

### B. Analysis

Defendant argues that the FDIC is a necessary party because the Participation Agreement gives the FDIC "significant control over and a financial interest in the Loan at issue in this dispute." (Compl. at 11:3-4.) In a similar argument, Defendant claims that the FDIC must necessarily be joined so as to avoid future inconsistent judgments should the FDIC decide to bring suit against him. (*Id.* at 11:13-14.)

Absent parties are necessary to a suit if (1) the court cannot grant complete relief among the existing named parties or (2) the absent parties claim an interest in the litigation. *Wright*, 597

F. Supp. 2d at 1205.  The "complete relief" factor concerns whether total relief is possible as between the named parties, not as between absent and named parties. *Id.*  Absent parties that claim an interest in the litigation are necessary to the suit only if "disposition of the action without the parties would [] impair or impede their ability to protect their interest or [] leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the claimed interest." *Id.*

The Court can grant complete relief because the Participation Agreement gives RESCON complete control over enforcement of the Loans.  By RESCON's admission, the FDIC maintains a substantial interest in the litigation given its Participation Interest. (Participation and Servicing Agreement Ex. A attached to Decl. of Michael Hogue, ECF No. 7-1.)  However, the FDIC's ability to protect this interest would not be impaired or impeded because, while the Participation Agreement removes the FDIC's ability to bring suit against the Guarantor for default, it does represent an enforceable contract as between the FDIC and RESCON. *See Franklin v. Commissioners of Internal Revenue*, 683 F.2d 125, 128 (5th Cir. 1982) (finding that terms of participation agreements govern participation relationships).  The FDIC can rely on that agreement to protect its interest in proceeds from the Loan.  Thus, disposition of this suit will not impair or impede the FDIC's ability to protect its interest in the litigation.

Similarly, disposition of this suit without joining the FDIC will not leave the Defendant vulnerable to multiple judgments.  Although Defendant argues that "there is nothing in the Participation Agreement that precludes the FDIC from pursuing claims separate from [RESCON]'s present claim," it is clear from the Participation Agreement that only RESCON can bring a claim relating to the Loans or loan documents. (Reply 8:4-5.)  In particular, the Participation Agreement states, "[u]pon the occurrence of an event of default under any of the Loan Documents… [RESCON] shall cause to be determined the response to such default and course of action with respect to such default, including… (d) the institution of proceedings

against any Guarantor." (Participation and Servicing Agreement Ex. A attached to Decl. of Michael Hogue, §6.01.)

The Court finds that, despite the language purporting to give the FDIC an "undivided ownership interest" in the Loans and other documents, the Participation Agreement clearly allows only RESCON to bring a suit for default. *Id.*; *see also In re AutoStyle Plastics, Inc.,* 269 F.3d 726, 736 (6th Cir. 2001) ("[t]he participant's only contractual relationship is with the lender; the participant has no ability to seek legal recourse against the borrower"). Furthermore, the Participation Agreement makes clear that the FDIC may look only to RESCON for payment, not to the borrower or guarantors. *Id.*; *see* Alan W. Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689 (1968) ("the participant's partial and undivided interest in the borrower's note and underlying collateral represents its security for a loan it really makes to the lead . . . [f]or this reason, the participant can look only to the lead for payment"). This is clear from the language in other sections of the Participation Agreement.[3] Thus, Defendant is not in jeopardy of receiving "double, multiple, or otherwise inconsistent obligations because of the claimed interest." *Wright*, 597 F. Supp. 2d at 1205.

Therefore, because disposition of this suit would not impair the FDIC's ability to protect its interest in the Loans and because disposition would not subject Defendant to multiple judgments, the Court finds that the FDIC is not a necessary party to this suit. For these reasons, the Court will not inquire as to whether joinder is feasible or the party indispensable. *See In re County of Orange*, 262 F.3d at 1018. Thus, the Court finds that RESCON did not fail to join an indispensable party.

/ / /

---

[3] For example, § 5.09 of the Participation Agreement gives RESCON "full power and authority, acting alone or through the Servicer and any Subservicers, to cause to be done any and all things in connection with the servicing and administration of the Loans that [RESCON] may deem necessary or desirable, and cause to be made all servicing decisions in its reasonable discretion, including the following: . . .(s) take any Enforcement Action," which refers to, among other things, "commencement of any litigation or proceeding."

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(B)(1); or Alternatively, to Dismiss for Failure to Join an Indispensible [*sic*] Party Pursuant to Fed. R. Civ. P. 19 (ECF No. 7 in this action, and ECF No. 7 in case no. 2:11-cv-1868-GMN-VCF) are **DENIED**.

DATED this 6th day of September, 2012.

_____
Gloria M. Navarro
United States District Judge