**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FNBN-RESCON I LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>John A. Ritter, et al.,<br><br>  Defendants. | Case No.: 2:11-cv-1867-JAD-VCF<br><br>**Order Denying Plaintiff's Motions for Summary Judgment [Doc. 42] and to Strike Defendants' Surreply [Doc. 53]** |

This breach of guaranty action involves five loans issued in the mid-2000s from private banks to several entities in connection with large-scale residential development projects in Las Vegas for which John Ritter, a Las Vegas real estate developer, signed guaranties personally and on behalf of the Mustang Trust and Focus Investment Manager, LLC, (collectively, "Defendants"). *See* Doc. 32.[1] RESCON, which currently holds the loans, sues Defendants for breach of these guaranties after the loans defaulted. *See id.* RESCON now moves for partial summary judgment on Defendants' liability for breach of these guaranties, which requires RESCON to present adequate evidence of the fair market value of the property at the time suit was commenced. Since RESCON has not satisfied this predicate step, the Court and denies the motion for summary judgment.[2]

---

[1] Plaintiff originally filed suit on November 18, 2011, Doc. 1, and duly amended its Complaint on January 7, 2013. Doc. 32.

[2] Defendants have filed a response, Doc. 44, and Plaintiff has filed a reply. Doc. 47.

1

**A. Motion for Summary Judgment**

**1. Background**

Over the course of several years, three investment entities—Ironwood Properties, LLC, Southwest Desert Entites, LLC, and PV Land Investment, LLC (collectively, "Property Investors")—acquired real estate in the Las Vegas area to be developed into two master-planned residential communities: Kyle Canyon and Stonewater. Doc. 44-1 at 2, 4. To facilitate these land purchases, Property Investors took out the following loans from First National Bank of Nevada, LLC and First National Capital LLC:

(1) On September 27, 2004, First National loaned Ironwood Properties, LLC $4,869.045.00. Doc. 43-1 at 3. The loan was secured by, *inter alia*, a deed of trust delivered to First National on September 27, 2004, and recorded in Clark County on October 12, 2004, which provided a first priority lien on the "Ironwood Property." *Id.* at 4. Ritter, both personally and as a Trustee of the Mustang Trust, delivered to First National Commercial Guaranties promising repayment of all amounts on the Ironwood Loan, as well as all performance thereto. *Id.* Both guarantees provided for a waiver of Nevada's "one action" rule. Doc. 43-1 at 14, 17. The FDIC was appointed receiver for First Nevada on July 25, 2008; Ironwood defaulted on its obligations at an unspecified time thereafter. *Id.* at 4-5.

(2) On August 1, 2005, First National loaned Southwest Desert Equities, LLC $11.9 million. Doc. 43-1 at 5. The loan was secured by, *inter alia*, a Deed of Trust with Assignment of Rents "executed and delivered by Ironwood" on July 13, 2005, and recorded on August 1, 2005, which provided a first priority lien over the "Southwest Desert Property 1." *Id.* at 5-6. Also on August 1, 2005, Ritter executed and delivered to First Nevada a Guaranty promising repayment of all amounts on the Southwest Desert Property 1 loan, and all performance thereunder. *Id.* at 7. The guaranty contains a waiver of Nevada's "one action" rule. Doc. 43-1 at 26. Southwest defaulted on its obligations at an unspecified time thereafter. *Id.*

(3) On December 12, 2005, First National loaned Southwest $1.6 million. Doc. 43-1 at 6. The loan was secured by, *inter alia*, a Short Form Deed of Trust and Assignment

of Rents. *Id.* at 6. Also on December 12, 2005, Ritter executed and delivered a guaranty promising repayment of all amounts on the Southwest Desert Property 2 loan, and performance thereunder. *Id.* at 7. The guaranty contains a waiver of Nevada's "one action" rule. *Id.* at 31. Southwest defaulted on its obligations at an unspecified time thereafter. *Id.* at 7-8.

   (4) On March 28, 2007, First National Capital, LLC, made two loans (Note 1 and Note 2) to PV Land Investments, LLC in the aggregate amount of $18.5 million. Doc. 43-1 at 8. The loan was secured by, *inter alia*, a Deed of Trust with and Security Agreement with Assignment of Rents and Fixture Filing executed by PV Land on March 28, 2007, and recorded on March 30, 2007, which provided a first priority lien over the "PV Land Property." *Id.* at 9. Also on March 28, 2007, Ritter, personally as Trustee of the Mustang Trust and as Manager of Focus Investment Manager, LLC, executed and delivered to First National a guaranty promising repayment of all amounts on the PV Land Property loans, and all performance thereof. *Id.* at 38, 52, 66. These guaranties contain a waiver of Nevada's "one action" rule. Doc. 43-1 at 38, 52, 66. First National Capital subsequently sold its entire interest in these instruments to First National, and PV Land defaulted on its obligations at an unspecified time thereafter. *Id.* at 9.

   Starting in 2008, the Focus entities came under significant financial pressure as a result of the economic downturn. Doc. 44-1 at 14. In early-to-mid 2008, Ritter contacted First Nevada representatives and informed them that the loans would not be paid when due, but that he was open to either (1) restructuring the loans, (2) foreclosing on the respective properties, or (3) simply relinquishing the properties to First Nevada in satisfaction of the loans. *Id.* First National claimed that due to regulatory scrutiny it would be unable to take any of these courses of action; however, it would be willing to extend the loans. *Id.* at 15. On May 19, 2008, Ironwood and First National entered into an agreement extending the maturity date of the loan to April 27, 2009. Doc. 44-1 at 17.[3] Also on May 19, 2008, PV

---

[3] Although no consideration appears to have been provided for this extension, the parties do not contest its validity.

3

Land, Southwest Desert, and JV Properties agreed to a loan extension date for an unspecified time with First National, for which $1,279,198.00 was paid. Doc. 44-2 at 1-6.

On July 25, 2008, the Office of the Comptroller of the Currency ("OCC") closed First National and appointed the FDIC as receiver, took over the operations of the loan issuers, and succeeded to their interests under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § § 1821 ("FIRREA"). *See* Docs. 43-1 at 4; 44-2 at 19. On February 2, 2009, the FDIC formed FNBN-RESCON and transferred "all of its right title and interest" in each of the loans to this new entity. Doc. 43-1 at 5, 7, 10. On February 5, 2009, Stearns SPV I, LLC, a private company, purchased and acquired from the FDIC a 100% membership interest in RESCON. *Id.*

**2.    Discussion**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4] When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[5] If reasonable minds could differ on the material facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed.[6]

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts;"[8] it

---

[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[5] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[6] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[8] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

4

"must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[9]  The Court may only consider properly authenticated, admissible evidence in deciding a motion for summary judgment.[10]

### a. *Defendants are entitled to the general protections of Nevada's deficiency judgment statutes.*

RESCON premises its motion on the contractual relationships between the parties, the validity of the guarantees, and the fact of default.  *See* Doc. 42.  Neither party disputes the validity of the transactions giving Stearns the right to enforce RESCON's interests or that, to date, RESCON has not brought a foreclosure action as to any of the subject properties.  Instead, Defendants argue that Nevada's anti-deficiency statutes protect guarantors like them by requiring loan holders like RESCON to first surmount specific procedural hurdles.  *See* Doc. 43 at 13-14.

Defendants correctly point out that as guarantors of promissory notes secured by a deed of trust, they are generally entitled to the protections of Nevada's deficiency judgment statute[11]—as it would be "incongruous and unjust" for guarantors to be held liable for debt when a lender forecloses on real property with a fair market value exceeding indebtedness and then seeks to enforce the full amount of the guaranty against the guarantor.[12]  RESCON does not deny that Defendants may avail themselves of the statutory protection of the deficiency judgment statutes in general, and the Court finds no authority to the contrary.  Thus, Defendants are eligible for anti-deficiency protection as guarantors, and RESCON is obliged to follow specific, procedural steps before exercising its authority to enforce the guaranties.

---

[9] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[10] Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

[11] *First Interstate Bank of Nevada v. Shields*, 730 P.2d 429, 431 (Nev. 1986).

[12] *Crowell v. John Hancock Mutual Life Insurance Co.*, 731 P.2d 346, 347-48 (Nev. 1986).

### b. *RESCON did not follow the procedural steps for securing a judgment when a guarantor waives the right to one-action-rule protections.*

Protections under Nevada's anti-deficiency statutes include the "one-action" rule, which requires "but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate."[13] This right may be waived under NRS § 40.495(2), which occurred here; thus, RESCON was not obligated to foreclose on the subject property prior to seeking to enforce Defendants' guaranties.[14] Nonetheless, RESCON was still required to comply with the prerequisite steps for determining a deficiency damage amount, making its summary judgment motion premature. NRS § 40.495(2) provides:

> [A]n action for the enforcement of that person's obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon real property may be maintained separately and independently from:
> (a) An action on the debt;
> (b) The exercise of any power of sale;
> (c) Any action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby; and
> (d) Any other proceeding against a mortgagor or grantor of a deed of trust.[15]

NRS § 40.495(4) further requires an evidentiary hearing on the amount of damages at issue before an action on the guaranty:

> If, before a foreclosure sale of real property, the obligee commences an action against the guarantor, surety or other obligor, other than the mortgagor or grantor of a deed of trust, to enforce an obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon the real property:
>
> (a) The Court must hold a hearing and take evidence presented by either party concerning the fair market value of the property as of the date of the commencement of the action. Notice of such hearing must be served upon all defendants who have appeared in the action and against whom a judgment is sought, or upon their attorneys of record, at least 15 days before the date set for the hearing.
>
> (b) After the hearing, if the court awards a money judgment against the guarantor, surety or other obligor who is personally liable for the debt, the

---

[13] NRS § 40.430(1).

[14] NRS § 40.430(1); 40.495(2); *Eli Applebaum IRA v. Arizona Acreage, LLC*, --- P.3d ----, 2012 WL 2367569, at *1 (Nev. June 21, 2012); *Walters v. Eighth Judicial District Court of State ex rel. County of Clark*, 263 P.3d 231, 232 (Nev. 2011). A guarantor may not waive the one-action rule in connection with specific provisions listed in NRS § 40.495(5), none of which are applicable here.

[15] NRS § 40.495(2).

6

> court must not render judgment of more than:
>
>> (1) The amount by which the amount of the indebtedness exceeds the fair market value of the property as of the date of the commencement of the action; or
>>
>> (2) If a foreclosure sale is concluded before a judgment is entered, the amount that is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, whichever is the lesser amount.[16]

No evidentiary hearing has been conducted to establish the deficiency amount—if any—under the procedures established by NRS § 40.495(4). Defendants correctly point out that because RESCON is not the owner of the property, it may not rest on the property values alleged in its complaint in order to establish the fair market value amount. Doc. 44 at 16.[17] Although Defendants attach a copy of what purport to be "Restricted Use Appraisal Reports" that James Q. Hutchinson, a Nevada Certified General Appraiser, prepared for Stearns Bank, *see* Doc. 44-3 at 6-34, Defendants claim that Hutchinson's appraisals do not establish the value of any of the subject properties as of the January 7, 2013, action commencement date and only purport to provide opinions of valuation for the Ironwood Property, the Southwest Desert 1 and 2 properties as of June 2, 2011, and December 17, 2012, and for the PV Land property as of November 19, 2012, even though the complaint was filed on January 7, 2013. Doc. 44 at 16.

The Court need not speculate whether Hutchinson's appraisals are accurate or useful, because the appraisals themselves are not competent summary judgment evidence. As the Ninth Circuit explained in *Bulthius v. Rexall Corp.*, "[e]xpert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in [an] affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not."[18] Thus, for an expert opinion to be considered on summary judgment, it must be accompanied by a proper affidavit or

---

[16] NRS § 40.495(4)

[17] *City of Elko v. Zillich*, 683 P.2d 5, 8 (1984) (citation omitted).

[18] *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985).

7

deposition testimony; courts in the Ninth Circuit "have routinely held that unsworn expert reports are inadmissible."[19]  No affidavit or deposition supports the contents of the Hutchinson appraisals.

In an effort to salvage its motion, RESCON promises that "its expert will prepare a Retrospective Value Opinion as to the value of the properties as of the date of filing the Complaint and the First Amended Complaint in compliance with NRS § 40.495(b)(4)(1)." Doc. 47 at 5.  Defendants' surreply takes umbrage with the timing of this promise, claiming that it contravenes the expert disclosure timetable under Federal Rule of Civil Procedure 26(e).  Doc. 51 at 6.  For purposes of the motion presently at issue, the Court need not explore the nexus between RESCON's proposed submission and the federal discovery rules; summary judgment rulings must be based on more than mere speculation about what evidence might show.[20]

RESCON has offered no competent summary judgment evidence to ascertain the fair market value of the properties that the guaranties secured.  Thus, the Court cannot determine whether there is a deficiency at this time, and summary judgment would be improper.

### c.   *RESCON may not pursue its action for liability without first presenting evidence that the damages threshold has been met.*

RESCON next contends that the Court may independently determine *liability*, as NRS § 40.495(4) only requires a hearing to determine *damages*.  Doc. 47 at 3-4.  RESCON puts the cart before the horse.  As Nevada courts have observed, where the fair market value of a property secured by a guaranty exceeds the amount of indebtedness, the Court is without authority to "award any judgment for alleged amounts due under the Guarantee."[21]  Although RESCON offers an opinion from another trial court that made a separate liability determination where the breach of the guaranty and the plaintiff's right to enforce the

---

[19] *Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011); *see also Ridgel v. United States*, 2013 WL 2237884, at *2-*3 (C.D. Cal. May 21, 2013); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210-11 (D. Nev. 2008); *King Tuna, Inc. v. Anova Food, Inc.*, 2009 WL 650732, at *1 (C.D. Cal. Mar. 10, 2009).

[20] *See Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 236 (1997).

[21] *Branch Banking and Trust Co. v. Jarrett*, 2013 WL 5741240, at *5 (D. Nev. Oct. 22, 2013).

8

agreement were undisputed due to the fact the motion itself was unopposed,[22] Defendants here raise as an affirmative defense the allegation that First National breached the implied covenant of good faith and fair dealing when, for valuable consideration, it extended the Property Investors' loan maturity dates shortly before the bank failed. *See* Docs. 41 at 10; 44-1 at 14-15. Since RESCON's enforcement authority flows entirely from the rights First National previously enjoyed, Defendants' good-faith-and-fair-dealing defense to First National's conduct clearly puts the scope of RESCON's authority at issue. Moreover, this good faith and fair dealing defense is not patently frivolous; FIRREA does not subject affirmative defenses to administrative exhaustion;[23] and the undisputed material facts do not show that the defense is foreclosed as a matter of law.

Having identified the existence of a potentially viable defense, the Court proceeds no further.[24] It is not in the interest of judicial efficiency to untangle the parties' various contentions regarding liability in a vacuum void of evidence that the value of the guaranties exceeds the fair market value of the underlying properties. As liability is contested and no deficiency has been competently demonstrated, summary judgment is denied.

**B.    Motion to Strike Defendants' Surreply**

Defendants filed a response to Plaintiff's Reply to address the "multitude" of new issues that they claim were raised in RESCON's reply. Doc. 51. RESCON moves to strike this filing because Defendants did not just seek leave to file it. Doc. 53.[25]

Defendants' filing is a surreply. Local Rule 7-2(a) governs the briefing.[26] Nothing in the rule authorizes any documents beyond the motion, response, and reply "unless otherwise

---

[22] *National Credit Union Administration Board v. Moradashi*, 2012 WL 1600453, at *1 (D. Nev. May 7, 2012).

[23] *Schettler v. RalRon Capital Corporation*, 275 P.3d 933, 939-40 (Nev. 2012) (citing 12 U.S.C. § 1821(d)(13)(D); *F.D.I.C. v. 26 Flamingo, LLC*, 2012 WL 4340629, at *6 (D. Nev. Sept. 20, 2012) (citing *Schettler*).

[24] For example, Defendants also claim that they are entitled to the protections of NRS § 40.459(1)(c); however, the Court need not reach this argument in order to dispose of the motion.

[25] Defendants have filed a response, Doc. 59, and Plaintiff has filed a reply. Doc. 60.

[26] Nev. LR 7-2(b).

9

ordered by the Court."[27]  Courts in this district routinely interpret Local Rule 7-2 to allow filing of surreplies only by leave of court, "and only to address new matters raised in a reply to which a party would otherwise be unable to respond."[28]  Filing of surreplies is highly disfavored, as it typically constitutes a party's improper attempt to have the last word on an issue.[29]  Accordingly, when a party does nothing more than seek to reserve the right to amend or supplement its filing, the "reservation" preserves nothing because "allowing a party to file supplemental arguments and evidence whenever they wish it would subvert the local rules that are in place to ensure timely responses."[30]

Defendants' proposed surreply ignores both Local Rule 7-2 and the numerous opinions in this district interpreting the scope of the rule.  Instead, it states only that "[t]here are no Federal Rules (local or otherwise) addressing the ability of a party to file a supplemental brief or surreply brief."  Doc. 51 at 2 n.1.  The Court notes, however, that the precise *method* for requesting leave is not specified in the rule.  Defendants do state that "to the extent the Court requires a request be made in order to file such a pleading, the Defendants request the Court consider this such a request."  Doc. 51 at 2 n.1.  Because Defendants' request for leave to file was both explicit and contained in the body of the surreply itself, the Court also construes Doc. 51 as a motion for *leave* to file a surreply.

As to the merits of Defendants' surreply, the Court finds that RESCON's reply in fact raised new arguments.  For example, in their initial motion, RESCON requested "all the relief requested in the Complaint," without limitation.  Doc. 42 at 16.  In their Reply, RESCON restricted the scope of its motion to a determination as to *liability*, not as to *damages*, and advanced several new arguments for why the Court could bifucate its consideration.  *See* Doc. 47 at n.1, 3-4, 18.  The Court may either discard these arguments or

---

[27] *Id.* at 7-2(c).

[28] *Kavnick v. City of Reno*, 2008 WL 873085, at *1 n.1 (D. Nev. 2008) (emphasis omitted).

[29] *See Avery v. Barsky*, 2013 WL 1663612, at *2 (D. Nev. Apr. 17, 2013) (citation omitted).

[30] *Toromanova v. Wells Fargo Bank, N.A.*, 2013 WL 1314974, at *2 (D. Nev. Mar. 28, 2013) (internal quotation omitted).

10

provide Defendants with the opportunity to respond to them.  The Court elects the latter course, has considered Defendants' surreply, and thus denies Defendants' motion to strike Plaintiffs' response to Defendants' reply.

## Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

It is **HEREBY ORDERED** that RESCON's Motion to Strike Defendant's Response to Plaintiff's Reply [Doc. 53] is **DENIED.**

It is **FURTHER ORDERED** that RESCON's Motion for Summary Judgment [Doc. 42] is **DENIED.**

DATED: March 12, 2013.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE